**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE:   THE HONORABLE M. MILLER BAKER, JUDGE

| | |
|---|---|
| ARCHROMA U.S., INC., | ) |
| Plaintiff, | ) |
| v. | ) Court No. 22-00354 |
| UNITED STATES DEPARTMENT OF COMMERCE and UNITED STATES INTERNATIONAL TRADE COMMISSION, | ) |
| Defendants, | ) |
| and | ) |
| THE FONG MIN (TFM) INTERNATIONAL CO. LTD., | ) |
| Defendant-Intervenor. | ) |

**SUPPLEMENTAL BRIEF OF THE**
**<u>UNITED STATES DEPARTMENT OF COMMERCE</u>**

Pursuant to Rule 56.2 of the Rules of this Court, the United States Department of Commerce respectfully responds to the Court's order dated April 4, 2024, requesting supplemental briefing. Order, ECF No. 48. In its order, the Court asked "whether 19 C.F.R. § 351.218(d)(1) is *ultra vires* because it permits Commerce to terminate an antidumping or countervailing duty order without first giving an interested party the opportunity to submit the substantive information

required by 19 U.S.C. § 1675(c)(2)." Order at 1-2. For the reasons set forth below, the regulation is not subject to *ultra vires* review, because Congress has provided for statutory review pursuant to 19 U.S.C. § 1516a(a)(1)(D). Moreover, Commerce's regulation is not unlawful under the applicable standard of review, because Commerce's regulations reflect a permissible construction of 19 U.S.C. § 1675(c).

## STATUTORY AND REGULATORY BACKGROUND

As discussed in our response brief (ECF No. 40), 19 U.S.C. § 1675(c)(1) provides that "5 years after the publication of . . . a determination under {the} section to continue an {antidumping} order," Commerce "shall conduct a review to determine . . . whether revocation of the . . . antidumping duty order . . . would be likely to lead to continuation or recurrence of dumping." 19 U.S.C. § 1675(c)(1)(C). Section 1675(c)(2) then outlines a procedure for the notice of initiation of a "five-year" or "sunset review," as follows:

> (2) Notice of initiation of review
>
> Not later than 30 days before the fifth anniversary of the date described in paragraph (1), the administering authority shall publish in the Federal Register a notice of initiation of a review under this subsection and request that interested parties submit—
>
> (A) a statement expressing their willingness to participate in the review by providing information requested by the administering authority and the Commission,

>(B) a statement regarding the likely effects of revocation of the order or termination of the suspended investigation, and
>
>(C) such other information or industry data as the administering authority or the Commission may specify.

*Id.* § 1675(c)(2). Section 1675(c)(3) describes the actions that Commerce must take "{i}f no interested party responds to the notice of initiation," and "{i}f interested parties provide inadequate responses." *See id.* § 1675(c)(3)(A)-(B). Section 1675(c)(3) does not, however, explain what it means for an interested party to provide no response or an inadequate response. Moreover, while the statute prescribes timelines for Commerce's final determinations in the event of no or inadequate responses, *see id.*, the statute does not set forth deadlines or otherwise set a procedure for interested parties to provide responses to the notice of initiation. Unless no interested party responds to the initiation or all responses are inadequate, Commerce generally must make its final determination in the sunset review within 240 days of initiation. *See id.* § 1675(c)(5)(A)

In the absence of a statutory procedure for the submission of responses to the notice of initiation, Commerce's regulations, at 19 C.F.R. § 351.218(d), set forth a procedure for interested parties to participate in a sunset review. Relevant to the Court's question, section 351.218(d)(1)(i) requires that "{w}here a domestic interested party intends to participate in a sunset review, the interested party must, not later than 15 days after the date of publication in the Federal Register of the

3

notice of initiation, file a notice of intent to participate in a sunset review with the Secretary." This notice must include information specified by Commerce, including a statement that the domestic producer intends to participate, as well as (1) contact information for the domestic interested party and the statutory basis for interested party status; (2) a statement addressing whether the domestic producer is related to certain types of foreign producers or exporters, and whether the domestic producer is an importer of the subject merchandise or related to an importer; (3) contact information for legal counsel or another representative; (4) identification of the subject merchandise and country subject to the review; and (5) the *Federal Register* citation and publication date for the notice of initiation. 19 C.F.R. § 351.218(d)(1)(ii). Commerce's regulations specify that "{i}f no domestic interested party files a notice of intent to participate in the sunset review, the Secretary will . . . {c}onclude that no domestic interested party has responded to the notice of initiation under {19 U.S.C. § 1675(c)(3)}," and will revoke the antidumping order. 19 C.F.R. § 351.218(d)(1)(iii)(B). If a notice of intent to participate is received, then all interested parties – including domestic interested parties, foreign manufacturers, and others – must file "complete substantive responses" within 30 days of the notice of initiation. *Id.* § 351.218(d)(3)(i).

# ARGUMENT

**I.      Commerce's Regulation Is Not Subject To *Ultra Vires* Review**

We note as a threshold matter in response the Court's question that Commerce's implementation of 19 C.F.R. § 351.218(d)(1) is not subject to *ultra vires* review in the formal sense of that term. "A claim that an action is *ultra vires* is different from a claim that the agency's regulation incorrectly implements the statute that the agency is charged with administering." *Sahaviriya Steel Indus. Pub. Co. Ltd. v. United States*, 601 F. Supp. 2d 1355, 1366 (Ct. Int'l Trade 2009). As explained by the Supreme Court *Leedom v. Kyne*, 358 U.S. 184 (1958), an *ultra vires* challenge is distinct from statutory review of an agency action taken "within {the agency's} jurisdiction," and is available only for the narrow purpose of obtaining injunctive relief against agency action taken "in excess of its delegated powers and contrary to a specific prohibition" in the law. *Id.* at 188. As stated by this Court, "{a}n *ultra vires* act is one performed without any authority to act whereas an error in the exercise of that power is insufficient to support an *ultra vires* claim." *Sahaviriya Steel*, 601 F. Supp. 2d at 1366 (citing *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 101 n. 11 (1984)).

Importantly, *ultra vires* review is available only where no statute, for example the Administrative Procedure Act, provides for review of an agency's actions. Specifically, an *ultra vires* claim "is available where (i) there is no express

5

statutory preclusion of all judicial review; (ii) 'there is no alternative procedure for review of the statutory claim; and (iii) the agency plainly acts in excess of its delegated powers and contrary to a specific prohibition in the statute that is clear and mandatory[.]'" *Fed. Express Corp. v. United States Dep't of Commerce*, 39 F.4th 756, 763 (D.C. Cir. 2022) (quoting *Nyunt v. Chairman, Broadcasting Board of Governors*, 589 F.3d 445, 449 (D.C. Cir. 2009)).

Where *ultra vires* review is available, a challenger faces a very high burden in demonstrating that the agency has acted without authority. The Supreme Court has "long required in *ultra vires* cases that the agency action go beyond mere legal or factual error and amount to a 'clear departure by the {agency} from its statutory mandate' or be 'blatantly lawless' agency action." *Fed. Express*, 39 F.4th at 764 (D.C. Cir. 2022) (quoting *Oestereich v. Selective Serv. Sys. Loc. Board No. 11*, 393 U.S. 233, 238 (1968)). "That demanding standard is necessary because *ultra vires* review seeks the intervention of an equity court where Congress has not authorized statutory judicial review." 39 F.4th at 765. Thus, the United States Court of Appeals for the District of Columbia has described a *Kyne* claim as "essentially a Hail Mary pass – and in court as in football, the attempt rarely succeeds." *Changji Esquel Textile Co. Ltd. v. Raimondo*, 40 F.4th 716, 722 (2022) (quoting *Nyunt*, 589 F.3d at 449).

Commerce's actions here are not subject to *ultra vires* review because statutory review is available pursuant 28 U.S.C. § 1581(c), which provides that the Court shall have exclusive jurisdiction over any civil action commenced pursuant to 19 U.S.C. § 1516a. Section 1516a in turn provides that an interested party may contest a final determination by Commerce pursuant to 19 U.S.C. § 1675(c)(3), for example Commerce's revocation of an antidumping order on the grounds that no interested parties responded to a notice of initiation. 19 U.S.C. § 1516a(a)(1)(D). In such challenges to a final decision pursuant to § 1675(c)(3), this Court "shall hold unlawful any determination, finding, or conclusion found . . . to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* § 1516a(b)(1)(B)(ii).

Because the § 1516a statutory review scheme is available, *ultra vires* review is unavailable. We further note, however, that even if such review were available, any *ultra vires* claim would fail because Congress has plainly delegated to Commerce authority to implement regulations for the conduct of sunset reviews. Specifically, § 103 of the Uruguay Round Agreements Act (URAA) delegates authority to Commerce to promulgate interim and final regulations implementing the provisions of the statute. *See* URAA, Pub. L. No. 103-465, 108 Stat. 4809 (1994) (codified at 19 U.S.C. § 3513). Moreover, Commerce's regulation is lawful under the § 1516a(b)(1)(B)(ii) standard of review, for the reasons set forth in the

next section.  Archroma therefore cannot not succeed on an *ultra vires* theory, which is highly exacting.  *Cf. Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 190 (D.C. Cir. 2006) (holding that because nonstatutory review is intended to be of extremely limited scope, it "represents a more difficult course for {a challenger} than would review under the {Administrative Procedure Act}").

## II.   The Regulations At 19 C.F.R. § 351.218(d)(1) Are Not Unlawful

Although Archroma's challenge is not subject to *ultra vires* review, we recognize that the Court may not be focused on an *ultra vires* claim *per se*, but rather on whether 19 C.F.R. § 351.218(d)(1) is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," under the standard of review provided by 19 U.S.C. § 1516a(b)(1)(B)(ii).  For the reasons set forth in this section, Commerce's regulation represents a lawful interpretation of § 1675(c).

As we explained in our response to Archroma's motion for judgment upon the agency record, this Court will evaluate Commerce's interpretation of a statute in accordance with *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).  *BMW of N. Am. LLC v. United States*, 926 F.3d 1291, 1298 (Fed. Cir. 2019).  Under the *Chevron* framework, the Court first examines "'whether Congress has directly spoken to the precise question at issue.'"  *Id.* at 1298 (quoting *Chevron*, 467 U.S. at 842).  If so, then both the Court and Commerce "must defer to Congressional intent."  *BMW*, 926 F.3d at 1298 (citing

*Chevron*, 467 U.S. at 843). However, "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *BMW*, 926 F.3d at 1298 (quoting *Chevron*, 467 U.S. at 843). The Court will deem an "'unreasonable resolution of {statutory} language'" impermissible. *BMW*, 926 F.3d at 1298 (quoting *Thai Plastic Bags Indus. Co. v. United States*, 746 F.3d 1358, 1364 (Fed. Cir. 2014)).

Section 351.218(d)(1) represents a lawful interpretation of § 1675(c). As explained above, § 1675(c)(2) requires Commerce to publish in the *Federal Register* – not later than 30 days before the fifth anniversary of a determination to continue an antidumping duty order – a notice of initiation of a review, and Commerce must "request that interested parties submit" (A) a statement expressing their "willingness to participate in the review," (B) a statement regarding the likely effects of revocation of the order, and (C) "such other information or industry data as {Commerce} may specify." 19 U.S.C. § 1675(c)(2).

Section 1675(c)(2) does not prescribe how Commerce must process any responses to the notice of initiation, much less does it require Commerce to consider substantive materials submitted by a domestic interested party irrespective of that party's compliance with procedures established by Commerce. To the contrary, the statute on its face only requires that Commerce issue the notice of

9

initiation seeking the listed categories of information. Moreover, while § 1675(c)(3) differentiates between the actions Commerce must take where there is "no response" to a notice of initiation, as opposed to an "inadequate response," the statute does not explain what will constitute "no response," specifically whether a domestic interested party must respond to the initiation notice within any specific timeframe. Thus, the regulation does not contravene the statutory language of 19 U.S.C. § 1675(c), nor does it go beyond the scope of Commerce's authority, because the statute does not directly speak to what constitutes "no response" versus "inadequate response," and it is reasonable for Commerce to determine that if a party does not submit a notice of intent to participate, as is required, then the party has not responded, triggering the revocation under 19 U.S.C. § 1675(c)(3).

Although § 1675(c)(2) does not prescribe a process for handling responses to the notice of initiation, and § 1675(c)(3) does not define what constitutes "no response," the statute plainly establishes that Commerce need not proceed with a sunset review in the absence of willingness to participate by an interested domestic party. That is clear from §§ 1675(c)(3) and (5), the latter of which specifies that Commerce need only proceed to conduct a review where a domestic interested party has responded to the notice of initiation.

With the existence of domestic-party responses to the notice of initiation a statutorily-required prerequisite to Commerce's consideration of the substance of

10

the sunset review, the question for the Court reduces to whether Commerce may lawfully impose a 15-day deadline for domestic-party notices of intent to participate, as the agency has done through 19 C.F.R. § 351.218(d)(1)(i).

The answer to that question must be yes. As we stated in our response to Archroma's motion for judgment on the record, "{a}bsent constitutional constraints or extremely compelling circumstances{,} the administrative agencies should be free to fashion their own rules of procedure and to pursue methods of inquiry capable of permitting them to discharge their multitudinous duties." *Vermont Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 543 (1978) (quotations omitted). The 15-day regulatory deadline promotes administrative efficiency and eliminates needless reviews because Commerce is informed within a reasonable amount of time whether it will need to conduct a full sunset review, which requires substantial time and resources from the agency, and, by statute, generally must be completed within 240 days of initiation. *See* 19 U.S.C. § 1675(c)(5)(A). The requirement also serves to alert potential respondent interested parties that they may need to file a substantive response 30 days after the notice of initiation. *See* 19 C.F.R. § 351.218(d)(3)(i) (requiring that all interested parties file any substantive responses no later than 30 days after the notice of initiation).

Commerce's procedure implements Congress's requirement that a domestic interested party respond to a notice of initiation in order to trigger the need for Commerce to conduct a full sunset review, as opposed to simply revoking the antidumping order. Commerce's requirement that domestic interested parties do so within 15 days is reasonable, as the requirement permits Commerce and potential respondent interested parties to prepare for a full review that must be completed within statutory deadlines. Commerce's regulation therefore is based on a permissible construction of the statute, and must be sustained. *See BMW*, 926 F.3d at 1298.

## CONCLUSION

For the reasons set forth above and in our response to Archroma's motion for judgment upon the agency record, we respectfully request that this Court deny Archroma's motion and enter judgment for the Government.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | BRIAN M. BOYNTON<br>Principal Deputy Assistant Attorney General |
|  | PATRICIA M. McCARTHY<br>Director |
|  | /s/Franklin E. White, Jr.<br>FRANKLIN E. WHITE, JR.<br>Assistant Director |
| OF COUNSEL: | /s/Geoffrey M. Long<br>GEOFFREY M. LONG<br>Senior Trial Counsel |
| AYAT MUJAIS<br>Senior Attorney<br>Office of the Chief Counsel For<br>  Trade Enforcement & Compliance<br>Department of Commerce | Commercial Litigation Branch<br>Civil Division<br>Department of Justice<br>P.O. Box 480<br>Ben Franklin Station<br>Washington D.C.  20044 |
| April 25, 2024 | Attorneys for the United States Department of Commerce |

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief complies with the Rules of this Court, the Court's Standard Chamber Procedures, and the Court's order requesting supplemental briefing (ECF No. 48) in that it contains 2,568 words, including text, footnotes, and headings.

/s/Geoffrey M. Long
GEOFFREY M. LONG

13